UNITED STATES OF AMERICA

IN THE WESTERN DISTRICT OF MICHIGAN

Rosemarie E. Aquilina  
    Plaintiff,

v.

Gene Wriggelsworth, Charles Buckland,  
    Defendants.

File No. 1:16-cv-

Hon.  
District Court Judge

_____/

J. Nicholas Bostic P40653  
Attorney for Plaintiff  
909 N. Washington Ave.  
Lansing, MI 48906  
517-706-0132

_____/

COMPLAINT AND JURY DEMAND

Plaintiff, for her complaint, states:

1. Plaintiff is a competent adult and is a resident of Ingham County in the State of Michigan at all times pertinent to this matter.

2. Defendant Gene Wriggelsworth is the elected sheriff of Ingham County Michigan, his county of residence is Ingham, and he conducts his duties as sheriff in Ingham County, Michigan. Defendant Wriggelsworth is sued in his individual capacity.

3. Defendant Charles Buckland is a deputy sheriff/detective for the Ingham County Sheriff's Office, his county of residence is unknown, and he performs his business in Ingham County, Michigan. Defendant Buckland is sued in his individual capacity.

4. At all times, Defendants Wriggelsworth and Buckland were acting under color of law.

5. This Court has jurisdiction over the federal claims pursuant to pursuant to 28 USC §§ 1331 and 1343(a)(4) and over state law claims pursuant to 28 USC §1367(a).

## GENERAL ALLEGATIONS

6.  Paragraphs 1 through 6 above are incorporated herein by reference.

7.  On August 2, 2016, an inmate in the custody of Defendant Wriggelsworth smuggled a shank inside the sleeve of his clothing and brought it into a courtroom.

8.  The inmate was standing at counsel table awaiting for a jury to return a verdict after a trial.

9.  The inmate removed the shank, charged across the courtroom, and attempted to stab an assistant prosecutor that had tried the case against him.

10.  The police officer in charge of the case reacted, blocked the inmate's attack, and took him to the floor where he was subdued.

11.  All proceedings in the 30th Circuit Court are captured via a closed circuit recording system that includes audio with the footage stored on computer servers in the building.

12.  All judicial assistants, information technology employees, and deputies assigned to courtroom security can monitor the video/audio feed live or play it back from the viewing terminals or from the server located in the conference room near the chambers of the judges.

13.  The courtroom at the time contained 12 jurors, two prosecutors, the officer in charge, two uniformed deputies, the presiding judge, a court reporter, at least one clerk, a bailiff, and at least seven spectators.

14.  At no time did the sheriff's office, the court administration, the chief judge, or any other person or entity state that the footage was confidential or evidence of a crime.

15.  On August 4, 2016, a reporter from the Lansing State Journal asked Plaintiff if he could record the video by using his own recording device to capture a playback of the incident on the judicial assistant's monitor in her chambers.

16. Plaintiff agreed and allowed him to make the recording.

17. On or about August 14, 2016, Defendant Buckland called Plaintiff and indicated that he was assigned to conduct an investigation into the release of the recording.

18. Plaintiff asked Defendant Buckland to identify what crime he was investigating and he declined or refused to do so.

19. On August 15, 2016, counsel for Plaintiff wrote a letter to Defendant Buckland notifying him that contact to Plaintiff was to be through counsel and that she would not be answering his questions until he identified the crime he was investigating.

20. Telephone calls to Defendant Buckland from Plaintiff's attorney's office to determine which facility he worked at went unreturned.

21. Multiple attempts were made to call the sheriff's office to determine which facility Defendant Buckland worked at but it was difficult to get through the automated answering system.

22. No definitive determination was ever made so the letter was mailed to Defendant Buckland at the main office on August 17, 2016 via first class mail.

23. Defendant Buckland persisted in his investigation and insisted on interviewing Plaintiff's judicial assistant and Plaintiff's law clerk.

24. For several months prior to August 2, 2016, discussions had been ongoing between the judges assigned to the Veteran's Memorial Courthouse and the Sheriff's Office about increased security in the courtroom areas of the building.

25. The judges were requesting more security and the Sheriff was refusing to provide it.

26. On September 6, 2016, Meko Moore filed an employment discrimination (gender/race and retaliation) claim against Defendant Wrigglesworth.

27. Mr. Moore had been a corrections officer employed by Defendant Wriggelsworth and assigned to the jail.

28. There is only one jail facility and the inmate that tried to stab the assistant prosecutor would have been housed in the jail where Mr. Moore works.

29. That file, Docket 16-669-CD, was assigned by blind draw to Plaintiff in her capacity as an elected judge to the 30th Circuit Court.

30. On September 12, 2016, an attorney left a voicemail message with Plaintiff's judicial assistant.

31. The message indicated that she had or would file an appearance and she did so on September 13, 2016.

32. The attorney was seeking a meeting with Plaintiff, the opposing counsel representing Mr. Moore, and herself to discuss the recusal of Plaintiff because the Sheriff's office "was or may be" investigating "certain circumstances" that occurred recently.

33. Defendant Wriggelsworth incorrectly or falsely informed his attorney that the incident happened in Plaintiff's courtroom when the August 2, 2016 incident happened in the courtroom of the Hon. James Jamo.

34. The attorney stated that "the sheriff requested" that the attorney seek recusal of Plaintiff from the case where he was a defendant.

35. Between August 17, 2016 and September 22, 2013, Defendants Buckland and Wriggelsworth submitted a warrant request to Ingham County Prosecutor Gretchen Whitmer seeking criminal charges against Plaintiff for the common law offense of obstructing justice.

36. Prosecutor Whitmer claimed a conflict of interest and asked the Attorney General to take action.

37. The Michigan Attorney General referred the matter to Clinton County Prosecutor Charles Sherman for review and authorization of charges.

38. On September 22, 2016, the Michigan Attorney General announced charges against the man that attempted to stab the assistant prosecutor.

39. On September 22, 2016, Defendant Wriggelsworth released or authorized the release of the fact that he had been investigating Plaintiff for obstruction of justice.

40. That release was then published on the internet via a television station and newspaper website, then on social media, and then on worldwide internet websites.

## COUNT I – FIRST AMENDMENT RETALIATION
### (42 U.S.C. §1983)

41. Paragraphs 1 through 40 above are incorporated herein by reference.

42. All Defendants were aware of Plaintiff's exercise of her First Amendment rights as a citizen to publish and speak about matters of public interest.

43. Plaintiff's First Amendment activities in allowing the video to be recorded by a member of the media were a substantial factor in the decisions of Defendant Wriggelsworth and Defendant Buckland to inform third parties that they were investigating an alleged crime involving Plaintiff.

44. Plaintiff's First Amendment activities both privately and as an elected official were a motivating factor in the decision of Defendant Wriggelsworth to release or authorize the release of the fact that he was requesting criminal charges against Plaintiff to the media.

45. Plaintiff's receipt of the assignment of the employment discrimination claim involving Defendant Wriggelsworth as a defendant was also a significant and motivating factor in the decision of Defendant Wriggelsworth to continue the investigation even though no crime had been identified so he could cause her recusal.

46. Having an inmate bring a shank into a courtroom is a matter of public concern.

47. Engaging in ongoing discussions between governmental entities concerning the resources allocated to court security is a matter of public concern.

48. Initiating, conducting, and disclosing an investigation into a person for that person's public expression over a matter of public interest would chill the willingness of an objectively reasonable person from exercising that First Amendment right.

49. As of August, 2016 it was clearly established that public officials or employees could not retaliate against citizens for engaging in protected speech or other activities protected by the First Amendment.

50. No reasonably trained and experienced law enforcement officer or government employee would believe that their actions in investigating, prosecuting and retaliating against Plaintiff were constitutional.

51. Plaintiff has been damaged in that she has suffered humiliation, embarrassment, anxiety, stress, and anger all of which have distracted her from her judicial duties as well as the loss of protection of the First Amendment to the United States Constitution.

52. The damages described above were directly and proximately caused by the conduct of Defendants.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in favor of Plaintiff and against Defendants in an amount not less than $25,000.00 each.

Count 2 – False Light Invasion of Privacy<br>(state law)

53. Plaintiff incorporates by reference paragraphs 1 through 52 above.

54. By virtue of their positions as law enforcement officers, Defendants Buckland and Wriggelsworth are tasked with the duties of investigating crimes.

55. A reasonably objective person would perceive that any investigation by a law enforcement officer involves at the very least an allegation of criminal conduct on the part of the person being investigated.

56. Granting permission of the media to record a recording of an event that occurred in a room that is open to the public by law cannot support any valid criminal charge.

57. By virtue of submitting a warrant request to a prosecutor, Defendants Buckland and Wriggelsworth have attributed to Plaintiff characteristics or conduct that were false, to wit: being suspected of committing a criminal offense.

58. By labeling their warrant request and public releases "obstruction of justice," Defendants Buckland and Wriggelsworth have escalated their false portrayal of Plaintiff as a potential felon.

59. Defendants Buckland and Wriggelsworth have published the false information about Plaintiff to three governmental entities.

60. Defendants Buckland and Wriggelworth have published the false information about Plaintiff to the media which has resulted in posting on the internet websites of at least one television and newspaper, social media, and worldwide electronic news sites.

61. Defendants Buckland and Wriggelsworth knew that Plaintiff's conduct was protected by the First Amendment.

62. Defendants Buckland and Wriggelsworth knew that Plaintiff's conduct did not amount to obstruction of justice or any other criminal activity.

63. To the extent Defendants Buckland and Wriggelsworth did not have actual knowledge of the First Amendment privilege or the lack of criminal activity, their conduct was in reckless disregard as to the falsity of the information and the false light in which they portrayed Plaintiff.

64. Defendant Buckland's and Defendant Wriggelsworth's conduct is malicious because it is motivated out of embarrassment for the shank attack, retaliation for First Amendment protected activity, and to improperly cause recusal of a properly assigned judge presiding over a case in which Defendant Wriggelsworth is a defendant.

65. Plaintiff has been damaged in that she has suffered humiliation, embarrassment, anxiety, stress, and anger all of which have distracted her from her judicial duties as well as the loss of protection of the First Amendment to the United States Constitution.

66. The damages described above were directly and proximately caused by the conduct of Defendants.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in favor of Plaintiff and against Defendants in an amount not less than $25,000.00 each.

SIGNATURE AND VERIFICATION BY PLAINTIFF:

I declare that the information above is true to the best of my information, knowledge, and belief.

23 Sept 16

Rosemarie E. Aquilina

SIGNATURE BY ATTORNEY:

9/23/2016
Date

/s/ J. Nicholas Bostic
J. Nicholas Bostic P40653
Attorney for Plaintiff

### JURY DEMAND

Plaintiff hereby demands trial by jury on all counts.

9/23/2016

/s/ J. Nicholas Bostic
J. Nicholas Bostic P40653
Attorney for Plaintiff
909 N. Washington
Lansing, MI  48906
517-706-0132
barristerbostic@att.net