UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSEMARIE E. AQUILINA,

        Plaintiff,

                                    CASE NO. 1:16-CV-1168

v.

                                    HON. ROBERT J. JONKER

GENE WRIGGLESWORTH and
CHARLES BUCKLAND,

        Defendants.
_____/

## OPINION AND ORDER

A custodial defendant in Ingham County smuggled a shank into a courtroom and assaulted the prosecutor with it.  The courthouse security cameras recorded the entire incident.  Judge Aquilina had access to the recording because of her position with the court, and she decided to let a journalist view and copy the recording.  Sheriff Wriggelsworth did not like seeing the courthouse recording in the public domain and directed Defendant Buckland to investigate what happened.  The investigation ultimately led to a request for criminal charges against Judge Aquilina, but the prosecutor assigned (from another County) declined to authorize a warrant.  Judge Aquilina brings this action against the now-retired Sheriff and Detective Buckland, claiming that the investigation was retaliation for her providing a journalist, and ultimately the public, with access to the courthouse tape.

A robust First Amendment necessarily protects citizens who speak from retaliation by public officials.  But when the speaker is a public employee, and the subject of the speech is part of the employee's official duties, other crucial interests come into play and limit the otherwise

applicable protection of the First Amendment. Judge Aquilina addressed a policy issue of courthouse security. It was naturally within the scope of her public duties. Moreover, the way she chose to speak – by leaking a courthouse video available to her only because she worked for the Court – obviously involved her public position. Under the Supreme Court's decision in *Garcetti*, that is not the kind of speech that supports a First Amendment retaliation claim, any more than it would if the speaker had been an entry level courthouse employee, and the alleged retaliator had been the Clerk of Court who fired the employee for the leak.

### 1. FACTUAL AND PROCEDURAL BACKGROUND

There is little dispute regarding the key facts of the case.[1] Plaintiff Aquilina is an elected judicial officer in the 30th Circuit Court of Ingham County, Michigan. At the time of the events that underlie this lawsuit, Defendant Wriggelsworth was the elected Sheriff of Ingham County, and Defendant Buckland was a deputy sheriff in the Ingham County Sheriff's Office. (ECF No. 1, PageID.1.)[2] Defendant Wriggelsworth's responsibilities as Sheriff encompassed responsibility for court security. Plaintiff states that she and some of her fellow judges were dissatisfied with the security provided at the courthouse. She states that the court administration scheduled a meeting with a security consultant for August 2, 2016, to address security concerns. (ECF No. 54, PageID.435-439.)

On August 2, 2016, a defendant in the courtroom of a different judge in the 30th Circuit Court of Ingham County became unruly, produced a shank from his sleeve, and charged at the prosecutors. (ECF No. 1, PageID.2.) Officers subdued the defendant. (ECF No. 54, PageID.440.)

---

[1] To the extent the parties disagree about the factual background, the Court accepts Plaintiff's version as true for the sole purpose of considering the merits of Defendants' motion.

[2] Defendant Wriggelsworth has since retired, completing his last full term in office on December 31, 2016. (ECF No. 54, PageID.435.)

A courtroom security camera recorded the altercation from start to finish.  (*Id.*)  The next day, a *Lansing State Journal* reporter came to Plaintiff's chambers and asked Plaintiff for permission to record the security video by using his own recording device to capture a playback of the incident on her judicial assistant's computer monitor.  (ECF No. 1, PageID.2.)  Plaintiff gave him permission to do so.  (*Id*., PageID.3.)

The following day, August 4, 2016, Defendant Wriggelsworth received a call from the *Lansing State Journal* reporter who had made the recording.  (*Id.*)  Defendant Wriggelsworth started an investigation of the release of the video as early as August 4, 2016.  Sergeant Harris assigned Defendant Buckland to the investigation on August 9, 2016.  (*Id.*, PageID.441.)[3]  Sgt. Harris and Defendant Buckland contacted the prosecutor's office the same day.  (*Id.*)  On August 14, 2016, Defendant Buckland notified Plaintiff that he was investigating the release of the recording.  (ECF No. 1, PageID.3.)  Plaintiff asked him what crime he was investigating, but he did not respond to the question.  (*Id.*)  Defendant Buckland also interviewed members of Plaintiff's staff, one of whom asked Defendant Buckland what crime he was investigating.  (*Id.*)  Defendant Buckland described the offense as "obstructing justice."  (ECF No. 54, PageID.441.)  Defendant Buckland does not recall whether he told others that the purpose of the investigation was "criminal, internal, or on behalf of the court."  (*Id.*)

In late August 2016, Defendants Wriggelsworth and Buckland sought a warrant for criminal charges against Plaintiff in connection with her release of the video.  A few weeks later, on September 22, 2016, charges against the defendant who had launched the courtroom attack became public.  The charges included, among other things, terrorism.  (*Id.* at PageID.442.)  The same day, news outlets reported that Defendant Wriggelsworth was seeking criminal charges

---

[3]Sergeant Harris is not a party in this case.

against Plaintiff.  Plaintiff was anxious about the investigation and possibility of criminal charges.  Her belief that Defendant Wrigglesworth held animosity toward her magnified her anxiety.  (*Id.*)  Plaintiff arranged for the care of her elderly mother and three minor children to ensure that they would not see her arrested, should an arrest take place.  (*Id.*)  Her children expressed concern to her about the possibility of arrest. (*Id.*)  Ultimately, the State did not bring charges against Plaintiff.  No arrest transpired.

Plaintiff states that she has had to recuse herself from certain cases and has experienced embarrassment due to the investigation.  (*Id.*)  Plaintiff filed this lawsuit on September 23, 2017, bringing a section 1983 claim of First Amendment retaliation and a state law claim of invasion of privacy – false light.  Plaintiff premises both claims on what she describes as a baseless criminal investigation undertaken in retaliation for her release of the video.  Defendants move for summary judgment.  (ECF No. 34).

## 2. LEGAL STANDARDS

Summary Judgment is appropriate where there are no genuine issues as to material fact and the moving party is entitled to judgment as a matter of law.  *Jones v. Potter*, 488 F.3d 397, 402 (6th Cir. 2007); FED. R. CIV. P. 56(a).  A genuine issue as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, the Court draws all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).  The ultimate question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

"A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015); *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that each defendant's conduct violated a constitutional or statutory right. *Pearson v. Callahan*, 555 U.S. 223, 235 – 37 (2009). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts may exercise their sound discretion in deciding which of the two prongs to address first. *Id.*

### 3. DISCUSSION

A prima facie case of First Amendment retaliation requires Plaintiff to show that (1) she engaged in constitutionally protected speech; (2) Defendants subjected her to an adverse action; and (3) the protected speech was a substantial or motivating factor for the adverse action. *Nair v. Oakland County Community Mental Health Authority*, 443 F.3d 469, 477-78 (6th Cir. 2006). To establish the first prong of the prima facie case, Plaintiff must show that the speech at issue – the release of the video to the journalist – is entitled to First Amendment protection. The Supreme Court's *Garcetti* decision and its progeny determine whether she has done so. *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

In *Garcetti,* the Supreme Court recognized that "when a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedoms." 547 U.S. at 418. A Government employee retains First Amendment protections for some types of speech, but the employee's First Amendment rights must be balanced against the Government's right as an employer to "promot[e] the efficiency of the public services it performs through its employees."

5

*Id.* at 417 (quoting *Pickering v. Board of Ed. of Tp. High Sch. Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968)). *Garcetti* establishes that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 422. Under *Garcetti*, a government employee is entitled to First Amendment protection only where the employee speaks "as a citizen" on "matters of public concern." *Id.* at 417, 421; *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007). Accordingly, to establish the first prong of the prima facie case, Plaintiff must show that in releasing the video she was speaking as a citizen on a matter of public concern. No one disputes that courthouse security is a matter of public concern. The issue is whether Plaintiff was speaking as a citizen.[4]

Whether an employee speaks "as a citizen" is a question of law for the Court. *Omokehinde v. Detroit Bd. of Ed.*, 563 F. Supp. 2d 717, 724 (E.D. Mich. 2008); *Davis v. Cook Cty.*, 534 F.3d 650, 653 (7th Cir. 2009); *cf. Nair*, 443 F.3d at 478. In making the determination, the Sixth Circuit looks to the content, audience, setting, and impetus for the employee's speech. *See Weisbarth*, 534 F.3d 545-46; *see also Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2008). The Court finds that Plaintiff's release of the video falls within the scope of her official responsibilities, and is not speech "as a citizen." Plaintiff had access to the video only by virtue of her official position. The *Lansing State Journal* reporter came to Plaintiff's judicial chambers to request permission to view the footage and make his own recording. Plaintiff had the ability to grant or deny his request only because of her official position. The reporter viewed the footage on court equipment used by Plaintiff and her staff to conduct court business. No one other than court

---

[4] The Sixth Circuit has been careful to note that the requirement that the employee "speak as a citizen" is separate and distinct from the requirement that the employee's speech "address matters of public concern." *See Weisbarth*, 534 F.3d at 545-46 (noting that *Garcetti* affects only the "speak as a citizen" requirement of the First Amendment analysis).

employees had access to the video. Plaintiff did not speak "as a citizen" when she released the video; she spoke as a government official. Under *Garcetti* and its progeny, as a matter of law, Plaintiff's speech falls outside constitutional protection.

Little more would need to be said if the case involved simply a supervisor and an employee, as in *Garcetti*. This case involves two elected individuals – co-equal "apex players" who report to the citizens, not each other. The same basic analysis still applies, as cases have found repeatedly. In *Shields v. Charter Twp. of Comstock*, 617 F. Supp. 2d 606 (2009), the plaintiff, a member of a Township Board claimed that other members of the Board unconstitutionally suppressed his speech during a Board meeting. The Court rejected the claim, observing that plaintiff's suit "alleges that his fellow board members injured him by doing precisely what elected board members are supposed to do: namely, argue with each other over policy issues, form majority coalitions, vote on substantive and procedural issues, and be held politically – not judicially – accountable by the voters." *Shields*, 617 F. Supp. 2d at 612. Similarly, in *Hogan v. Township of Haddon*, No. 04-2036(JBS), 2006 WL 3490353 (D. N.J. Dec. 1, 2006), the court held that an elected official received no First Amendment protection when she spoke as part of her official duties. In *Hartman v. Register*, No. 1:06-cv-33, 2007 WL 915193, *7 (S.D. Ohio March 26, 2007), the court likewise found that "the distinction between the plaintiff in *Garcetti* and a public official, in this case Plaintiff, is inconsequential." Even before the *Garcetti* decision, the Sixth Circuit in *Zilich v. Longo*, 34 F.3d 359 (1994), rejected a former city council member's claim that his fellow city council members retaliated against him for speech he made during his tenure on the city council. The court observed that a "legislative body does not violate the First Amendment when some members cast their votes in opposition to other members out of political spite or for partisan, political or ideological reasons." *Id*. at 363.

In the Court's view, it is especially important to ensure that the speech of a public official does not become a predicate for a retaliation claim against another public official. Citizens elect public officials to speak on issues of public concern, and both citizens and elected officials know that such speech triggers opposition from other public officials. For elected officials to clash in the course of performing their official duties is a natural part of the public policy process. And clashes between elected officials should normally be resolved by the ballot box, not in a courtroom. That is particularly true when the elected contenders are State or local officials, and the courtroom is federal.

The Court emphasizes the limited nature of its decision in this case. The Court's ruling does not mean that a public official may abuse his or her office as long as the target is another public official. In this case, for example, if the prosecutor had authorized charges and Defendants arrested Plaintiff without probable cause, a Fourth Amendment civil rights action would be available. Moreover, the Court's decision on Plaintiff's First Amendment claim has no bearing on her state law claim for invasion of privacy – false light, which addresses a different kind of harm. A state court should have the opportunity to consider the merits of the Plaintiff's state law claim. The Court declines to exercise supplemental jurisdiction over that claim. *See* 28 U.S.C. § 367(c)(3). All the Court is deciding here is that *Garcetti* removes Plaintiff's speech as a public official from the otherwise applicable protections against retaliation for speech.

4. **CONCLUSION**

For these reasons, the Court concludes that Defendants are entitled to summary judgment in their favor on Plaintiff's section 1983 claim of First Amendment retaliation, and declines to exercise supplemental jurisdiction over Plaintiff's state law claim.

**ACCORDINGLY, IT IS ORDERED**:

1. Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 34) is **GRANTED** as to Plaintiff's section 1983 First Amendment retaliation claim and is **DISMISSED** without prejudice in all other respects.

2. Plaintiff's state law claim for false light – invasion of privacy is **DISMISSED WITHOUT PREJUDICE**.

3. Defendants' Motion to Adjourn Dates (ECF No. 66) is **DISMISSED AS MOOT**.

Dated:   January 4, 2018            /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    CHIEF UNITED STATES DISTRICT JUDGE